United States Court of Appeals
FOR THE EIGHTH CIRCUIT
No. 96-3372

United States of America,         *
         *
      Plaintiff - Appellee,      *
         * Appeal from the United States
    v.         * District Court for the Eastern
         * District of Missouri.
Miron Taylor, also known as    *
Hakeem Afiz,         *
         *
      Defendant - Appellant.    *

_____

Submitted: April 10, 1997
Filed:   September 9, 1997

_____

Before McMILLIAN, FLOYD R. GIBSON, and JOHN R. GIBSON, Circuit Judges.

_____

FLOYD R. GIBSON, Circuit Judge.

Presenting challenges to two evidentiary rulings made by the district court, Miron Taylor appeals his conviction for being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1) (1994). We conclude that any error committed by the district court[1] was harmless in light of the overwhelming evidence of Taylor's guilt, and we therefore affirm.

_____

[1]The HONORABLE CAROL E. JACKSON, United States District Judge for the Eastern District of Missouri.

# I.  BACKGROUND

On July 8, 1995, Taylor placed an emergency 911 call from a St. Louis residence.  In his conversation with the dispatcher, Taylor stated that he and his father, Roosevelt Purnell, had been "having some problems," and he indicated that, out of fear for his own safety, he had fired a gun "in the vicinity" of the older man.  When officers from the St. Louis Metropolitan Police Department (the "Department") arrived at the scene shortly thereafter, they spotted Taylor crawling through a second floor window of the house.  The patrolmen ordered Taylor to stay in the window, and he, in turn, advised them that his father, who allegedly had a number of firearms, was going to shoot him.  In addition, Taylor shouted, "I have a gun also, I'll throw it out."  At that time, Taylor left the window and reentered the building, only to reappear a short while later with a long barreled shotgun which he dropped to the ground.  Taylor then climbed out of the window and jumped to "safety."

Upon entering the house a short while later, the officers found Roosevelt Purnell lying dead in the middle of the living room floor, the victim of a gunshot wound to the chest.  The authorities then took Taylor into custody and transported him to the Department's homicide office.  During the course of questioning by detectives, Taylor revealed that he and his father had argued that day.  The dispute escalated, and Taylor claimed to have become scared when he saw Purnell carrying an item that appeared to be a rifle.[2]  To protect himself, Taylor discharged one shot in his father's direction and called the police after retreating to the second story of the residence.  Taylor admitted that he owned the shotgun he used in the incident.

---

[2]Taylor later told his interrogators that Purnell had been carrying a handgun, and he finally conceded that he did not know whether, in truth, Purnell possessed any sort of weapon at the time Taylor fired his shotgun.

The officials discovered that a jury had previously convicted Taylor of voluntary manslaughter, a felony. Armed with this information, federal prosecutors obtained an indictment charging Taylor with one count of violating 18 U.S.C. § 922(g)(1), by possessing a firearm as a convicted felon. A warrant issued, and on February 27, 1996 law enforcement officers in Charleston, Mississippi arrested Taylor at what was then his home. While standing in the front yard of the house, an apparently incredulous Taylor asked the arresting agents how he could be accused of illegally possessing the shotgun when he had purchased the weapon prior to his conviction. Later, at an office of the Charleston Police Department, Taylor again volunteered that he owned the firearm he used to shoot Purnell.

Prior to trial, in an attempt to keep from the jury evidence of his voluntary manslaughter conviction, Taylor offered to stipulate that he is a felon. In light of this concession, Taylor moved the district court in limine to prevent the Government from introducing evidence related to the previous offense. The Government declined the proposed stipulation, and the court denied the motion in limine after deciding, in reliance upon what at that time was the well established law of this Circuit, see, e.g., Rush v. United States, 795 F.2d 638, 639 (8th Cir. 1986), that prosecutors must be allowed the opportunity to prove every element of their case. The court also rejected Taylor's efforts to absolutely prohibit the Government from mentioning during its case in chief details surrounding Purnell's death.[3] In accordance with these rulings, the

---

[3]In deciding to permit the Government to elicit some testimony about occurrences incidental to Purnell's death, the district court reasoned that it would be "very difficult if not impossible to present to the jury an understanding of the events that happened and put them into context without some mention of the fact that there was a shooting, whether that resulted in the death of Mr. Purnell or not." The court placed restrictions on the Government's use of this evidence, however, specifically admonishing that the prosecution would "not . . . be . . . able to prove that [Taylor] killed Mr. Purnell." The court explained, "I will allow the [G]overnment to offer some limited information or testimony regarding this incident without going into the details of Mr. Purnell's death."

Assistant United States Attorney, over Taylor's objections, introduced into evidence testimony and documents establishing Taylor's voluntary manslaughter conviction as well as Purnell's shooting. Taylor did not present any evidence on his own behalf, but instead rested at the close of the Government's case. The jury found Taylor guilty of the charged crime, and the district judge sentenced him to ten years imprisonment.

A few months later, the United States Supreme Court held in a 5-4 decision that where a defendant being tried for violating § 922(g)(1) offers to stipulate to his felony status, the risk of unfair prejudice inherent in evidence of the earlier crime will generally outweigh the proof's probative value if "the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations." Old Chief v. United States, 117 S. Ct. 644, 647 (1997). Taylor argues in this appeal that the Old Chief opinion demonstrates that the district court abused its discretion when it denied his motion in limine seeking to exclude evidence of his involuntary manslaughter conviction. Taylor also contends that the district court committed error when it allowed the Government to introduce evidence of events surrounding Purnell's death. We address these assertions seriatim.

## II. DISCUSSION

### A. Old Chief

Citing the Supreme Court's ruling in Old Chief, Taylor maintains that the district court abused its discretion when it rejected his proposed stipulation and allowed the Government to introduce evidence proving his prior conviction for voluntary manslaughter. We agree with Taylor that, in view of his offer to concede the issue,

exposing the jury to the name and nature of his earlier manslaughter offense was arguably "likely to support conviction on some improper ground." Old Chief, 117 S. Ct. at 655. Consequently, we must necessarily conclude that the district court's denial of Taylor's motion in limine might constitute an abuse of discretion under Old Chief. See id.

This determination alone, though, does not compel reversal. The Court in Old Chief left open the question of whether harmless error is available when a district court wrongfully fails to exclude proof relevant to the previous conviction, see id. at 656 n.11, but our Circuit has since decided that errors of this variety are, in fact, amenable to review under that standard. See United States v. Horsman, 114 F.3d 822, 827 (8th Cir. 1997); United States v. Blake, 107 F.3d 651, 653 (8th Cir. 1997). Pursuant to Rule 52(a) of the Federal Rules of Criminal Procedure, an error is harmless if it "does not affect substantial rights," Fed. R. Crim. P. 52(a), and we have interpreted the Rule to require reversal of a conviction "only if the jury may have been substantially swayed by improperly admitted evidence," Horsman, 114 F.3d at 828 (quotation omitted).

In the case sub judice, we have no difficulty concluding that any error was harmless. To succeed in obtaining a conviction under § 922(g)(1), the Government must prove beyond a reasonable doubt that (1) the defendant has previously been convicted of a crime that was punishable by a term of imprisonment exceeding one year, (2) the defendant knowingly possessed a firearm, and (3) the firearm has been in or has affected interstate commerce. See id. at 824. At trial, the Government introduced abundant evidence on each of these elements, and Taylor does not presently dispute that fact. Instead, he primarily claims that the asserted error cannot be regarded as harmless because it interfered with the jury's capacity to consider his fear of injury as a justification for illegally possessing a firearm.

We disagree. As an initial matter, this Court has not yet recognized "justification" as a valid defense to a § 922(g) violation, see, e.g., United States v. Lomax, 87 F.3d 959, 961 (8th Cir. 1996), and we again refrain from doing so today. Still, even were we, in certain rare circumstances, to grant a felon the opportunity to justify his unlawful possession of a gun, Taylor has not shown that the defense would apply in this case. In particular, the evidence introduced at trial could not lead a reasonable juror to surmise that Taylor "had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct." United States v. Blankenship, 67 F.3d 673, 677 (8th Cir. 1995)(quotation and alteration omitted); cf. Mathews v. United States, 485 U.S. 58, 63 (1988) ("As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."). Likewise, the evidence could not support a finding that Taylor "had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm." Blankenship, 67 F.3d at 677 (quotation omitted). Due to an absence of evidence establishing these two necessary prerequisites to any justification defense, see id., it is clear that this sort of excuse would have been unavailable to Taylor.[4] Because Taylor did not have a justification defense at his disposal, any error which frustrated his ability to present that "defense" was, as a matter of course, harmless.

In sum, though Old Chief now makes it probable that the district court abused its discretion when it spurned Taylor's offer to stipulate to his status as a felon, we are

---

[4]Throughout the course of this case, Taylor has at some times referred to his desired defense as one of "coercion." Like justification, coercion is a defense which is, at the present time, a stranger to § 922(g) prosecutions in this Circuit. Even so, having reviewed the record, we are confident that the facts elicited at trial could not substantiate a coercion defense. See Blankenship, 67 F.3d at 677-78 ("One who has full opportunity to avoid the [criminal] act . . . cannot invoke the doctrine of coercion." (quotation omitted)).

convinced that the jury could not have been "substantially swayed by [the] improperly admitted evidence." Horsman, 114 F.3d at 828. To the contrary, we conclude that any error was harmless given the overwhelming evidence of Taylor's guilt.

## B. Evidence Regarding the Shooting of Roosevelt Purnell

Taylor next claims that the district court abused its discretion when it allowed the Government to introduce evidence concerning the shooting death of Roosevelt Purnell.[5] Specifically, Taylor avers that this evidence was unduly prejudicial and inflammatory under Rule 403 of the Federal Rules of Evidence.[6] We cannot agree. As mentioned above, the district court limited the Government's proof on this issue to that which was truly essential to a full presentation of its case. Given this circumstance, and because there was an undeniably close relationship between the shooting of Purnell and Taylor's possession of a firearm, we do not think the prejudicial impact of the disputed evidence substantially outweighed its probative value. See Fed. R. Evid. 403. In any event, the admission of this evidence was harmless in light of the overpowering evidence of Taylor's guilt.

## III. CONCLUSION

---

[5]In a related vein, Taylor faults the Government for "repeatedly" referring to certain "homicide detectives" who had investigated the case and who testified for the prosecution. Nonetheless, Taylor has neglected to direct us to any appellate decision reversing a conviction because prosecutors referred to witnesses by their duly earned titles.

[6]The events leading up to Purnell's shooting did not represent extrinsic evidence of another crime, which would have been subject to exclusion under Rule 404(b), because those particulars constituted "an integral part of the immediate context of the crime charged." United States v. Bass, 794 F.2d 1305, 1312 (8th Cir.), cert. denied, 479 U.S. 869 (1986); see also United States v. Maddix, 96 F.3d 311, 315 (8th Cir. 1996).

For the reasons set forth above, we affirm Taylor's conviction.[7]

AFFIRMED.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

_____

[7]By affirming, we also reject Taylor's argument that the cumulative effect of the district court's "errors" resulted in prejudice that cannot be considered harmless.