# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 97-2299

_____

Kenneth Blankenship,

        Appellant,

v.

United States of America,

        Appellee.

Appeal from the United States
District Court for the
Eastern District of Missouri.

_____

Submitted: May 12, 1998
Filed: October 6, 1998

_____

Before BOWMAN, Chief Judge, HEANEY and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Kenneth Blankenship appeals the district court's summary denial of his postconviction motion attacking his sentence on a claim of ineffective assistance of counsel. See 28 U.S.C. § 2255 (1996). He argues that the district court erred by denying his motion without a hearing and by not providing any case-specific reasons for the summary disposition. We affirm.

## I.

In 1992, Blankenship entered a conditional guilty plea to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (1988), and a panel of this court affirmed his conviction. See United States v. Blankenship, 67 F.3d 673, 678 (8th Cir. 1995). Our prior panel opinion set forth the facts of this case, see id. at 674-75, 678, which we briefly summarize here. A man named John Kellick, his girlfriend, and two others, went to Blankenship's trailer home late one night seeking money that Kellick claimed Blankenship owed him. Id. at 674. An argument ensued between Kellick and Blankenship. Id. Blankenship said Kellick was intoxicated and threatened to harm Blankenship's family. Id. at 678. When the argument escalated, Blankenship returned inside his trailer (which did not have a telephone), left through a back door, and walked to his father's nearby trailer (which also had no telephone). Id. at 674, 678. There, he retrieved a shotgun and returned to the confrontation at his own home in an asserted effort to protect his family. Id. When a scuffle broke out, the shotgun Blankenship carried discharged, killing Kellick. Id.

Blankenship pleaded guilty to being a felon in possession of a firearm, but conditioned his guilty plea upon preserving his right to raise two issues on appeal: (1) the district court's denial of his motion to dismiss the indictment on the basis of the Speedy Trial Act, 18 U.S.C. § 3161-3174; and (2) the district court's rejection of his asserted justification defense. A panel of this court rejected Blankenship's arguments and affirmed the judgment of the district court. Id. at 678.

Currently pending is Blankenship's first 28 U.S.C. § 2255 motion, in which he claims that his counsel was ineffective at sentencing for not requesting a downward departure from the federal Sentencing Guidelines on the ground that the wrongful conduct of Kellick, the victim, contributed significantly to provoking the offense. See U.S. SENTENCING GUIDELINES MANUAL § 5K2.10 (1995) (Policy Statement). The district court summarily denied the motion without holding an evidentiary hearing and

2

without providing reasons for the summary disposition. Blankenship appealed, and this court granted a certificate of appealability for his ineffective assistance of counsel claim.

## II.

On appeal, Blankenship argues that the district court erred by summarily denying habeas relief without holding a hearing on his ineffective assistance of counsel claim. We review for an abuse of discretion the district court's decision to deny a section 2255 motion without a hearing, and we review de novo the district court's rejection of the claims involved. Payne v. United States, 78 F.3d 343, 347 (8th Cir. 1996). A section 2255 "petitioner is entitled to an evidentiary hearing when the facts alleged, if true, would entitle him to relief," id. (internal quotations omitted), unless the motion, files, and records of the case conclusively show that the movant is not entitled to relief. 28 U.S.C. § 2255; Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995). "Accordingly, a petition can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Id. Thus, to determine whether Blankenship was entitled to an evidentiary hearing, we must consider the validity of his allegation of ineffective assistance of counsel in light of the record in his case.

The district court's summary dismissal does not expressly state its reasons for rejecting Blankenship's claim of ineffective assistance, and Blankenship seeks a remand to allow the district court to articulate its reasons. While the preferred practice would most certainly be for the district court to have enumerated its reasons for the summary dismissal, our review of the district court's rejection of the claims involved is de novo.

See Payne, 78 F.3d at 347.  We conclude that a remand is not necessary, and we may affirm the district court on any basis supported by the record.[1]

To prevail on an allegation of ineffective assistance of counsel at sentencing, Blankenship must show both (1) that his attorney's performance was deficient, falling below professional standards of competence; and (2) that the deficient performance prejudiced his defense.  See Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Wajda v. United States, 64 F.3d 385, 387 (8th Cir. 1995).  In assessing counsel's performance, courts defer to reasonable trial strategies and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689; see also Henderson v. Norris, 118 F.3d 1283, 1287 (8th Cir. 1997), cert. denied, 118 S. Ct. 1081 (1998).  When considering whether the defense suffered prejudice, a court must determine whether "there is a reasonable probability [sufficient to undermine confidence in the outcome] that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694; Wise v. Bowersox, 136 F.3d 1197, 1206 (8th Cir. 1998).  We also consider "whether the result of the proceeding was fundamentally unfair or unreliable."  Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

Turning first to the prejudice prong of the familiar Strickland test, we recognize that we need not address the competency of counsel's performance if the prejudice issue is dispositive.  See  466 U.S. at 697 (noting "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies"); see also United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996).  We consider whether the motion for downward departure, which Blankenship asserts his counsel should have made, had a reasonable probability of affecting the outcome or fundamental fairness of Blankenship's

---

[1]Contrary to the dissent's view, we do not hold that the district court should have held a hearing on Blankenship's § 2255 motion.

4

sentencing. No prejudice arises from counsel's failure to raise a claim that had little likelihood of success on the merits. See Thomas v. United States, 951 F.2d 902, 904-05 (8th Cir. 1991).

The federal Sentencing Guidelines provide that a district court may grant a downward departure "below the guideline range to reflect the nature and circumstances of the offense" in cases where "the victim's wrongful conduct contributed significantly to provoking the offense behavior." USSG § 5K2.10, p.s. This policy statement further provides factors to consider "in deciding the extent of a sentence reduction" on this basis. Id. These factors include the relevant physical characteristics of the victim in comparison with those of the defendant, the defendant's efforts to prevent a confrontation, the danger either reasonably perceived by the defendant or actually presented by the victim, and "any other relevant conduct by the victim that substantially contributed to the danger presented." Id. § 5K2.10(a)-(e), p.s.

In his affidavit in support of his ineffective assistance of counsel claim, Blankenship states that he was awakened one night by Kellick and a group of people outside his trailer home. He asserts that Kellick appeared to be drunk and threatened to harm Blankenship's father. Fearing for his family's safety, Blankenship then left his trailer by the back door, retrieved a gun from his father's trailer, and returned, intending to scare Kellick into leaving. After a struggle, the shotgun discharged, killing Kellick. Blankenship then had his wife call the police from a neighbor's house. Blankenship asserts that Kellick had a reputation for violence. (See Appellant's Adden. at 15-17.) We note that these same facts were before the district court and this court on direct appeal in support of Blankenship's justification defense, which was rejected as a matter of law. See Blankenship, 67 F.3d at 678. Aware of these facts (as well as the Presentence Investigation Report's recommendation of an upward departure on the ground that the seriousness of his criminal history was under-represented), the district court sentenced Blankenship at the top of the applicable Guidelines sentencing range. In his direct appeal, we held that even if this circuit recognized a justification defense,

5

Blankenship's evidence did not satisfy the requisite elements of such a defense because he "recklessly placed himself in the situation," purposefully returned to continue the confrontation after retrieving a gun, and had "reasonable alternatives" aside from escalating the confrontation, including avoiding the confrontation by staying inside his home.  Id.  Additionally, we concluded that "there was no evidence that Kellick was armed or presented a real threat of serious harm to Blankenship or his family."  Id. While a defendant need not prove the elements of a justification defense in order to obtain a downward departure on the basis of the victim's wrongful conduct, the specific findings in the record of this case regarding those elements eliminate any reasonable likelihood that the district court would have granted a downward departure on the basis of the victim's wrongful conduct.

A section 5K2.10 motion for downward departure is warranted when the victim's behavior significantly contributed to provoking the behavior of the offense, which in this case is possession of a firearm by a convicted felon.  This policy statement manifests a concern for proportionality in the defendant's response.  See United States v. Shortt, 919 F.2d 1325, 1328 (8th Cir. 1990) (holding that while adultery is wrongful, departure was not warranted because a plot to blow up the adulterers is a disproportionate response to such conduct).  The record here indicates that the victim, Kellick, wrongfully started or provoked a confrontation outside Blankenship's home, but he was not armed and presented no serious threat of harm.  Blankenship chose to enter into the confrontation and then to escalate the confrontation by leaving and returning with a loaded weapon, though other reasonable alternatives were available to him.  He could have as easily sent his wife to call the police at the outset of the argument as he did at its tragic end.  On this record, we are convinced that the district court would not have concluded that the victim's wrongful conduct substantially contributed to the behavior of the offense -- being a felon in possession of a firearm -- because Blankenship's response was disproportionate to the threat posed by the victim's conduct.

6

Blankenship argues that a downward departure was probable because his case is similar to the facts of United States v. Yellow Earrings, 891 F.2d 650, 653-54 (8th Cir. 1989). In that case, this court affirmed the district court's grant of a downward departure motion based on the victim's wrongful conduct where the defendant stabbed the victim after the victim had attempted to sexually abuse the defendant. Id. We conclude that the situation in Yellow Earrings was not similar to the case at hand. First, the victim in Yellow Earrings was in the same room as the defendant and was attempting to force intercourse on the defendant; the victim also verbally abused the defendant. The victim's violent and abusive behavior provoked a violent response from the defendant. Id. To the contrary, while Kellick's conduct was wrongful, he had not become violent but was merely yelling outside the trailer house, and he did not have a weapon. Blankenship's response of bringing a weapon into this situation simply was not proportionate to the threat. Second, in this habeas case we are bound by the findings and conclusions already of record. Specifically, the record contains specific findings that the victim was not a serious threat and was not armed. The district court did not have discretion to ignore the existing record, and we reject Blankenship's contention that Yellow Earrings is dispositive here.

Our review of the record convinces us that Blankenship has not established a reasonable probability that the result of his sentencing would have been different had his attorney sought a downward departure on the basis of the victim's wrongful conduct. Thus, his ineffective assistance of counsel claim fails for lack of a showing of prejudice. Also as noted above, because we affirm upon our de novo review of the record and for the reasons stated, we reject Blankenship's argument that the case must be remanded for the district court to articulate its case-specific findings supporting summary disposition.

III.

Accordingly, we affirm the judgment of the district court.

7

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. In my view, Kenneth Blankenship's counsel was ineffective at sentencing. On direct review of Blankenship's conviction, this court recited the facts leading to the victim's death.

> Blankenship's proffered evidence would tend to show that an intoxicated Kellick, accompanied by his son and two women, came to Blankenship's trailer home after midnight, seeking the return of some money and threatening harm to Blankenship and his family if he did not pay. Blankenship took the threats of harm seriously because he knew Kellick to have a reputation for violence when he was intoxicated and to have a reputation for carrying a knife or razor in his possession. Blankenship went out to talk to Kellick. When the confrontation escalated, Blankenship returned to his bedroom in the trailer, put on his pants, and exited through the back door when Kellick was not paying any attention. Blankenship walked to his father's nearby trailer, retrieved a shotgun, and returned to the yard to protect his family. Neither Blankenship nor his father had a telephone. The two men became involved in a scuffle as Kellick refused to leave and grabbed for the shotgun. The shotgun inadvertently discharged in the scuffle and killed Kellick.

United States v. Blankenship, 67 F.3d 673, 678 (8th Cir. 1995).

We determined that under these facts, Blankenship was not entitled to the defense of justification. We did, however, determine that Blankenship and Kellick, the victim, became involved in a scuffle when Kellick refused to leave. We further noted that at that point Kellick grabbed for the shotgun, which was held by Blankenship, and the shotgun inadvertently discharged in the scuffle and killed Kellick. Under these circumstances, it was clear error for the district court to impose a sentence based on voluntary rather than involuntary manslaughter. The relevant statute provides:

Manslaughter is the unlawful killing of a human being without malice.  It is of two kinds:

Voluntary--Upon a sudden quarrel or heat of passion.

Involuntary--In the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death.

18 U.S.C. § 1112(a) (1984).

Here, Kellick was not killed upon a sudden quarrel or heat of passion.  He was, as our opinion notes, killed during a scuffle in which Kellick attempted to take the shotgun from Blankenship's hands.  While I accept our earlier decision that a defense of justification was not justified, certainly the district court on sentencing could and should have ruled that the manslaughter was involuntary.  This would have reduced the base offense level from 25 to 10 or 14.[2]  Either level would have resulted in a significantly lower sentence for Blankenship than that imposed by the district court.

I assume, for the purpose of this opinion, that the conduct may have been reckless because Blankenship went in the house and returned with the shotgun, but his

---

[2]The difference between the two levels of involuntary manslaughter are defined in the sentencing guidelines as follows:

**Involuntary Manslaughter**

(a)  Base Offense Level:

    (1)  **10**, if the conduct was criminally negligent; or

    (2)  **14**, if the conduct was reckless.

U.S.S.G. § 2A1.4.

actions certainly did not rise to the level of voluntary manslaughter when it is clear from our prior opinion that Kellick attempted to take the shotgun from Blankenship and was killed during the scuffle.  Not only was it clear error for the district court to have ruled that Blankenship's conduct amounted to voluntary manslaughter, but counsel was clearly ineffective for failing to assert this claim at the sentencing hearing.  Finally, even if it be argued that Blankenship's conduct amounted to voluntary manslaughter, counsel was clearly ineffective in not requesting that the district court depart downward.

I agree with the majority that the district court should have held a hearing on this matter, but would not be as charitable.  My basic disagreement is with the majority's assertion that no prejudice arises from counsel's failure to raise a claim that has little likelihood of success on the merits.  I believe the likelihood of success is great.

While my preference would be to have the district court sentence Blankenship for involuntary manslaughter, at the very least this case should be remanded with directions to grant a substantial downward departure.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

10